UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **RICKEY WAYNE GIPSON** | **CIVIL ACTION NO. 06-2065-P** |
| **VERSUS** | **JUDGE WALTER** |
| **LARRY DEAN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Rickey Wayne Gipson ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on November 2, 2006. Plaintiff is currently incarcerated at the Winn Correctional Center, but he complains his civil rights were violated by prison officials while detained at the Bossier Sheriff Correctional Facility in Plain Dealing, Louisiana. He names Sheriff Larry Dean, Dr. Russell Roberts, David Gorman and the Bossier Parish Police Jury as defendants.

Plaintiff claims that on May 9, 2006, he was booked into the Bossier Parish Maximum Facility. He claims that in late May 2006, he went to the infirmary because he had a sexually transmitted disease ("STD"). He claims Nurse Billy informed him that he had a yeast infection. He claims she gave him an anti-fungal cream and sulfur medication.

He claims that after taking the sulfur medication for six days, he developed hives on his head and shoulders. He claims he returned to the infirmary and Nurse Billy gave him Benedryl for his hives and discontinued the sulfur medication.

Plaintiff claims that on May 25, 2006, he went to the infirmary because he had bumps on his penis that burned and itched. He also claims he had an ear infection and wax build-up. He claims nurse David Gorman examined his penis and informed him that he had a viral infection, not a yeast infection. He claims David Gorman also informed him that the doctor would be available the following Monday. He claims David Gorman did not examine his ears, but did give him prescription ear wax removal medication.

Plaintiff claims that in June 2006, Nurse Billy checked his blood pressure. He claims she informed him that his blood pressure was high and he needed to take medication twice a day. He claims he told her he did not have high blood pressure and did not need medication. He claims Nurse Billy told him that if he did not take his medication, he would be placed on suicide watch. He claims he then took the medication because he did not want to be placed on suicide watch. He complains that the medication makes him drowsy.

Plaintiff claims that on June 8, 2006, he was given Benedryl during pill call for a yeast infection which was determined to be genital herpes three weeks later. He claims that 30 minutes after taking the Benedryl, he experienced pain and pressure in his right ear. He claims the pain intensified as his ear lobe swelled to three times its normal size and his ear canal swelled shut. He claims Deputy Tallant called for the paramedics. He claims that two

hours later, he was still lying in his bed crying and waiting on the paramedics when a deputy gave him Ibuprophin. He claims that 20 minutes later his ear drum ruptured and began to bleed. He claims that on the following afternoon, Dr. Russell Roberts examined him and gave him antibiotic ear drops. He claims he used the medication for six or seven days. He claims he suffered hearing loss in his right ear.

Plaintiff claims that in late June 2006, he wrote a medical kite regarding his hearing loss and wax build-up in his left ear. He claims that on July 3, 2006, Dr. Roberts flushed out his left ear and examined his right ear. He claims Dr. Roberts informed him that his right ear was no longer infected. He claims he then informed Dr. Roberts about his hearing loss and the recurring pains in his right ear.

Plaintiff claims that on July 5, 2006, David Gorman checked his blood pressure. He claims David Gorman was upset that he had complained to the Warden regarding his medical treatment. He claims David Gorman informed him that he had not received his herpes medication for two days because the infirmary was out of the medication, but that he would receive it as soon as it became available.

Plaintiff claims his requests to go to the STD clinic for diagnosis of his condition have been denied. He claims he has also been denied an HIV/AIDS test. Plaintiff claims he is being charged for his medical visits and medication even though he is indigent.

Plaintiff claims that on September 9, 2006, prison guards gave him a larger dose of his prescribed medication which caused him to sleep. He claims his trial was scheduled for

September 10, 2006. He claims he was extremely confused and disoriented on his trial date because he had been given the wrong dosage of medication on the previous day.

Plaintiff claims that on September 26, 2006, his legal mail was opened by prison employees. He claims that on September 27, 2006, he informed a guard that he needed his in forma pauperis application completed.

Plaintiff claims that on November 19, 2006, he filed a medical kite to see the doctor because his groin area itched, burned and smelled. He claims that on November 20, 2006, Nurse Billy treated him for Trichomoniasis and jock itch. He claims she did not perform any tests to confirm her diagnosis. He claims she gave him a seven-day supply of medication for Trichomoniasis and cream for jock itch.

Plaintiff claims that on December 10, 2006, he filed a medical kite to see the doctor because he had sinus drainage and his groin area itched, burned and smelled. He claims that on December 12, 2006, David Gorman treated his sinus drainage and gave him medication. He claims David Gorman did not treat his Trichomoniasis because Dr. Roberts wanted to examine him.

Plaintiff claims that on December 15, 2006, he was examined by Dr. Roberts. He claims Dr. Roberts performed a prostate examination and informed him that he had a prostate infection. He claims Dr. Roberts prescribed antibiotics for him for 28 days and discontinued his back pain medication. He claims Dr. Roberts discontinued the medication because it was not alleviating his back pain and he felt the new medication would.

Plaintiff claims that on January 9, 2007, he filed a medical kite because he had not received his prescribed antibiotics since January 5, 2007. He claims that on January 10, 2007, he wrote a kite requesting to see a doctor because he had pain in his lower back and hip.

Plaintiff claims that on January 11, 2007, he was taken to the infirmary. He claims that while in the waiting area, he overheard David Gorman and Deputy Jones discussing his criminal case and pending complaints. He claims David Gorman informed him that he would make him an appointment with the doctor. He claims that on January 12, 2007, he was examined by Dr. Roberts for back and hip pain. He claims Dr. Roberts continued his antibiotics for two more weeks and offered to perform a prostate examination.

Plaintiff claims that on April 30, 2007, he went to sick call because he had pain and loss of motion in his right arm and shoulder. He claims Nurse Billy prescribed Ibuprophin three times a day for ten days and told him to return if he still had pain after ten days. Plaintiff claims that on May 14, 2007, he returned to sick call because he still had pain and loss of motion in his right arm and shoulder. He claims Nurse Billy refused to give him a prescription because she felt that he had caused the injury himself by doing push-ups and told him to buy medication from the canteen. He claims he told her that he was indigent and could not afford to buy medication in the canteen. He claims that as of July 16, 2007, he had not received proper medical treatment for his arm and shoulder.

As relief, Plaintiff seeks monetary compensation and a transfer to another facility.

For the following reasons, Plaintiff's civil rights should be dismissed.

## LAW AND ANALYSIS

**Medical Care Claims**[1]

Plaintiff was a pre-trial detainee at the time of these alleged violations. The standard to apply in analyzing a denial of medical care or inadequate medical care claim asserted by a pre-trial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997), quoting Hare v. City of Corinth, 74 F.3d 633, 644 (5th Cir. 1996). "A 'condition of confinement' case is a 'constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement.'" Scott, 114 F.3d at 53, quoting Hare, 74 F.3d at 644.[2] An episodic act or omission case is defined as follows:

> [W]here the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case and is not amendable to review under the Wolfish test. [I]n an episodic act or omission case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission. [Internal citations and quotation marks omitted.]

Id.

---

[1] Plaintiff's claims regarding the denial of medical care for his arm and shoulder pain will be discussed in the administrative remedy section of this Report and Recommendation.

[2] In such a case, the reasonable relationship test of Bell v. Wolfish, supra, is applicable. Under this test, if the condition of confinement is reasonably related to a legitimate, non-punitive governmental objective, the condition is constitutional. Scott, 74 F.3d at 53.

In Nerren v. Livingston Police Dept., 86 F.3d 469 (5th Cir. 1996), the Fifth Circuit classified a case involving the alleged denial of adequate medical care to an arrestee as an episodic case. Thus, the instant claims are analyzed as an episodic act case. In Nerren, the court applied a deliberate indifference standard stating, "a state official's episodic act or omission violates a pretrial detainee's due process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." The court then defined subjective deliberate indifference as "subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference." Nerren, 86 F.3d at 473. This is the same standard applicable to convicted prisoners,[3] that is, the medical care must be "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Thus, Plaintiff must allege and be able to prove that each named Defendant has been deliberately indifferent to his serious medical needs or the claim is subject to dismissal as frivolous. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind; thus, the

---

[3] The Eighth Amendment applies to convicted prisoners. There are two requirements that must be met to show that a prison official has violated the Eighth Amendment. The first is an objective requirement that the inmate allege a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811, 823 (1994). Second, only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. A prison official must have a sufficiently culpable state of mind, defined as deliberate indifference or knowing disregard of an excessive risk to inmate health or safety. Farmer, 128 L.Ed.2d at 825; Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). Under this standard, a lack of proper inmate medical care can be cruel and unusual punishment only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976).

test is "subjective recklessness" as used in the criminal law. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997). Also, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992). Finally, a prisoner must also allege an injury that is more than de minimis, although it need not be significant. See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). See also Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997).

The record does not contain facts which sufficiently show that the named Defendants have been deliberately indifferent to any serious medical needs. As discussed above, a constitutional violation requires a sufficiently serious deprivation and deliberate indifference on the part of the defendant prison official. Farmer, supra. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801,

809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

First, Plaintiff complains he received inadequate medical care for a sexually transmitted disease (STD). He claims his requests to go to the STD clinic for diagnosis were denied. He further claims his requests for an HIV/AIDS test were denied. The record demonstrates that Defendants were attentive to the medical needs of Plaintiff. Plaintiff admits he was seen by Dr. Roberts and the medical staff numerous times for an STD and given medication to treat his condition. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff claims that in May 2006, Nurse Billy incorrectly diagnosed his condition and treated him for a yeast infection. He claims he was allergic to the medication and developed hives. He admits he was treated in the infirmary for this reaction and the medication was discontinued. The record demonstrates that Defendants were attentive to the medical needs of Plaintiff. Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of the Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988).

Plaintiff claims that on November 19, 2006, he filed a kite to see the doctor. He admits that on November 20, 2006, he was treated for an STD and jock itch and given medication and cream. The record demonstrates that Defendants were attentive to the medical needs of Plaintiff. He complains that the nurse diagnosed him without performing any tests. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff claims that on January 9, 2007. he filed a medical kite because he had not received his prescribed antibiotics since January 5, 2007. He claims that on January 11, 2007, he was taken to the infirmary and an appointment was scheduled with the doctor. He claims the following day he was examined by the doctor who continued his medication for two more weeks. Plaintiff has failed to demonstrate that Defendants acted with deliberate indifference to his serious medical needs when they failed to given him his medication for a few days. As previously discussed, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of the Defendants do not rise to the level of a constitutional tort.

Second, Plaintiff claims he received inadequate medical treatment for an ear infection and ear wax build-up. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. Plaintiff admits that on May 25, 2006, he was

seen at the infirmary for an ear infection and wax build-up. He further admits he was given medication for ear wax removal.

Plaintiff claims that in June 2006, he experienced pain and pressure in his right ear. He claims his ear lobe swelled to three times its normal size and his ear canal swelled shut. He claims the deputy called for the paramedics. He claims that approximately two hours later the deputy gave him Ibuprophin for his pain. He claims that approximately 20 minutes later his ear drum ruptured. He complains that someone cancelled the call to the paramedics and he did not receive medical attention until the following day. Plaintiff admits that he was examined by Dr. Roberts and given antibiotics. Plaintiff claims as a result of his ear drum rupture, he has hearing loss. The Court finds that Defendants were not deliberately indifferent to a serious medical need. Plaintiff admits that he was seen in the infirmary in late May 2006 and was given medication for ear wax removal. Plaintiff complains that he was not treated or examined for an ear infection. Plaintiff has failed to demonstrate that Defendants acted with deliberate indifference to his serious medical needs when they failed to examine his ear for an ear infection. Plaintiff admits that in late May 2006, the medical staff treated him for ear wax. As previously discussed, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. Furthermore, Plaintiff admits the deputy called the paramedics pursuant to his request and gave him medication for pain. Plaintiff complains that the call to the paramedics was cancelled and he did not receive

Page 11 of 17

treatment until the next day. The Court notes that treatment for a ruptured ear drum is antibiotic therapy to treat and/or prevent infections in the ear. See Lawyers' Medical Cyclopedia 107, (James G. Zimmerly, M.D., J.D., M.P.H. ed., Vol. 6-3d ed. 1991); The American Medical Association Encyclopedia of Medicine 368, (Charles B. Clayman, M.D., ed, 1989). The Court further notes that in most cases, no other treatment is needed, since the ear drum will usually heal on its own. Id. at 386. Plaintiff admits that he received antibiotic therapy the following day and he was examined by the doctor. Thus, Defendants were not deliberately indifferent to a serious medical need of Plaintiff. As previously discussed, the fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Third, Plaintiff claims that in June 2006, the medical staff determined that he had high blood pressure and made him take medication. He claims he does not have high blood pressure and the medication makes his sleep. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Fourth, Plaintiff claims that in July 2006, he did not receive his herpes medication for two days. He claims he was told that the infirmary was out of the medication and he would receive it as soon as they received a new supply of the medication. Plaintiff has failed to show that Defendants acted with deliberate indifference to a serious medical need.

As previously discussed, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort.

Fifth, Plaintiff claims that on September 9, 2006, prison guards gave him the wrong dose of his prescribed medication. He claims that as a result, he was confused and disoriented for his court appearance the next day. Plaintiff does not allege the prison guards deliberately gave him the wrong dose of medication. Thus, he fails to show that the prison guards acted with deliberate indifference to his serious medical needs. As previously discussed, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort.

Accordingly, these claims regarding the denial of medical care and inadequate medical care should be dismissed with prejudice as frivolous.

**Payment Claims**

Plaintiff complains that he has been charged for medical visits and medication even though he is indigent. Plaintiff does not have a constitutional right to free medical care. Hutchinson v. Belt, 957 F.Supp. 97 (W.D. Louisiana 1996) (citations omitted). Accordingly, Plaintiff has failed to state a violation of his constitutional rights and this claim should be dismissed with prejudice as frivolous.

**Mail Claim**

Plaintiff claims that on September 26, 2007, his legal mail was opened by prison employees. "A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts.[4] Additionally, such interference may violate the prisoner's First Amendment right to free speech--i.e., the right to be free from unjustified governmental interference with communication." Brewer v. Wilkinson, 3 F.3d 816, 820, (5th Cir. 1993), cert. denied, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed 2d 39 (1994). In determining the constitutional validity of prison practices that impinge upon a prisoner's rights with respect to mail, the appropriate inquiry is whether the practice is reasonably related to a legitimate penological interest. Brewer, 3 F.3d at 824.

The Fifth Circuit has held that in order to prevent the sending of contraband, prison authorities may open a prisoner's mail for inspection. Jackson v. Cain, 864 F.2d 1235, 1244 (5th Cir. 1989) citing Guajardo v. Estelle, 580 F.2d 748, 759 (5th Cir. 1978). Thus, Plaintiff's allegation that prison officials opened his legal mail does not rise to the level of a constitutional violation and his claim should be dismissed with prejudice as frivolous.

**Exhaustion of Administrative Remedy Procedure**

Plaintiff claims that on May 14, 2007, he returned to sick call because he still had pain and loss of motion in his right arm and shoulder. He claims Nurse Billy refused to give him a prescription because she felt that he had caused the injury himself by doing push-ups

---

[4] The Court notes that Plaintiff does not allege that he was denied access to the courts, or even that the subject mail was legal in nature. The Court therefore pretermits discussion of the more stringent analysis of a denial of access to the courts claim.

and told him to buy medication from the canteen. He claims he told her that he was indigent and could not afford to buy medication in the canteen. He claims that as of July 16, 2007, he had not received proper medical treatment for his arm and shoulder.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Section 1997e requires Plaintiff to exhaust available administrative remedies before filing a Section 1983 suit and precludes him from filing suit while the administrative complaint is pending. See Wendell v. Asher, 162 F.3d 887 (5th Cir. 1999) (unexhausted claim must be dismissed even though exhausted several days after suit was filed). The Fifth Circuit has applied the requirement to denial of medical care claims. See Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

After reviewing the complaint filed in this action, it is obvious that Plaintiff has failed to exhaust administrative remedies as to this claim since it occurred after he filed this complaint on November 2, 2006. Accordingly, Plaintiff has failed to exhaust administrative remedies as to this claim and it should be dismissed without prejudice pursuant to 42 U.S.C. §1997e(a).

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before

Page 15 of 17

or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims regarding medical care (except his arm and shoulder claims), payment of fees, and legal mail should be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) and his claims regarding medical care for his arm and shoulder should be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies pursuant to 42 U.S.C. §1997e(a).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 10th day of April, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE